IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MILDRED KIRKLAND, as** | : | CIVIL ACTION |
| **Administratrix of the Estate of** | : | |
| **Charles Kirkland, deceased** | : | |
| **3714 Mizelle Road** | : | |
| **Apartment C** | : | |
| **Greensboro, NC 27405** | : | |
| | : | |
| v. | : | No. |
| | : | |
| **MHM SERVICES** | : | |
| **1593 Spring Hill Road** | : | |
| **Vienna, Virginia 22182** | : | |
| | : | |
| **EDGAR MARTINEZ, M.D.** | : | |
| **c/o MHM Services** | : | |
| **MOD II** | : | |
| **Philadelphia House of Corrections** | : | |
| **8001 State Road** | : | |
| **Philadelphia, PA 19136** | : | |
| | : | |
| **MARIA PETROVIC, M.D.** | : | |
| **c/o MHM Services** | : | |
| **MOD II** | : | |
| **Philadelphia House of Corrections** | : | |
| **8001 State Road** | : | |
| **Philadelphia, PA 19136** | : | |
| and | : | |
| **TROY SMITH** | : | |
| **c/o City Solicitor's Office** | : | |
| **One Parkway, 1515 Arch Street** | : | |
| **15th Floor** | : | |
| **Philadelphia, PA 19102** | : | **JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Plaintiff, Mildred Kirkland, as Administratrix of the Estate of Charles Kirkland, by and through her attorneys, Kline & Specter, A Professional Corporation, says by way of Complaint against all defendants, the following:

## JURISDICTION AND VENUE

1. Jurisdiction in this Court is invoked pursuant to 42 U.S.C. §1983. Plaintiff also invokes the pendent jurisdiction of this Court to hear and decide claims arising under state law.

2. The practices and conduct alleged were committed in the Eastern District of Pennsylvania, wherein, upon reasonable belief, all defendants either work or operate. Therefore, venue in this Court is invoked under 28 U.S.C. §§1331 and 1343.

## PARTIES

3. Plaintiff, Mildred Kirkland, is an adult female and citizen of the state of North Carolina.

4. Mildred Kirkland was appointed as Administratrix of the Estate of Charles Kirkland on January 17, 2008. Letters of Administration are attached hereto as Exhibit "A."

5. Defendant MHM Services is a corporation or other jural entity located at 1593 Spring Hill Road, Vienna, Virginia 22182.

6. Defendant MHM Services has a principal place of business located at MOD II Philadelphia House of Corrections, 8001 State Road, Philadelphia, PA 19136.

7. Defendant MHM Services has a contract to provide mental health services to inmates and detainees within the Philadelphia prison system.

8. Defendant Edgar Martinez, M.D. ("Dr. Martinez") is, upon information and belief, a physician licensed to practice medicine in the Commonwealth of Pennsylvania. At all times relevant hereto, Dr. Martinez was responsible for delivering mental health services to Joshua Herder and Charles Kirkland while both were assigned as inmates to the Philadelphia Industrial Correctional Center's ("PICC") K-Unit.

9. Defendant Maria Petrovic, M.D. ("Dr. Petrovic") is, upon information and belief, a physician licensed to practice medicine within the Commonwealth of Pennsylvania.

10. At all times relevant hereto, Dr. Petrovic practiced psychiatry at the Philadelphia Detention Center's Prison Health Services Wing ("PHSW").

11. At all times relevant hereto, Dr. Petrovic provided mental health treatment to Joshua Herder. Dr. Petrovic also determined that Joshua Herder could be discharged from PHSW.

12. Defendant Troy Smith is an employee of the City of Philadelphia. At all times relevant hereto, defendant Smith was a correctional officer at the Philadelphia Industrial Correctional Center.

## OPERATIVE FACTS

13. On or about December 7, 2007, Charles Kirkland was detained in his prison cell at the Philadelphia Industrial Correctional Center.

14 On that same date, Charles Kirkland was assigned to a cell at the Philadelphia Industrial Correctional Center with Joshua Herder.

15. At the time of his incarceration at the Philadelphia Industrial Correctional Center ("PICC"), Mr. Herder was being held on charges of murder.

16. Prior to allegedly committing this homicide, Mr. Herder had a history of mental illness.

17. Prior to the alleged homicide, Mr. Herder had already served time in prison after assaulting a mental health worker and wielding a knife in church.

18. After being arrested and charged with murder, Joshua Herder arrived at the Curran-Fromhold Correctional Facility's ("CFCF") intake unit on October 19, 2007.

19. While in a holding cell at CFCF, Mr. Herder, in the presence of a correctional officer, stated that he had "killed someone and that he was thinking of doing it again."

20. This homicidal ideation was heard and noted by Sergeant James Hamilton, who was responsible for supervising the intake unit at CFCF.

21. As a result of expressing this homicidal ideation, on October 19, 2007, Mr. Herder was removed from CFCF and sent to PHSW, where he came under the care of Dr. Petrovic.

22. While at PHSW, under the care of Dr. Petrovic and MHM, Mr. Herder was diagnosed with chronic paranoid schizophrenia and poly-substance dependency.

23. On November 16, 2007, Mr. Herder was transferred to PICC's K-Unit, a transitional unit for inmates with behavioral health problems.

24. The decision to transfer Mr. Herder to the transitional K-Unit was made by Dr. Petrovic.

25. At the time that she decided to transfer Mr. Herder to the K-Unit, Dr. Petrovic completed a discharge summary form, a document that accompanied Mr. Herder to K-Unit.

26. In the discharge summary form, Dr. Petrovic failed to alert correctional and mental health staff that Mr. Herder had voiced homicidal ideations prior to his discharge from PHSW.

27. At no time before or after inmate Herder was discharged from PHSW to PICC's K-Unit did Dr. Petrovic contact or otherwise inform anyone at PICC or MHM to alert them to the fact that Mr. Herder had a recent history of homicidal ideation.

28. After Mr. Herder was transferred to the K-Unit, members of the K-Unit treatment team, including Dr. Martinez, never knew that Mr. Herder had a recent history of expressing homicidal ideation.

29. In addition to receiving the discharge summary, Dr. Martinez and his treatment team at K-Unit also received Mr. Herder's medical file, including Dr. Petrovic's progress notes.

30. At no time prior to Charles Kirkland's murder did Dr. Martinez or any member of his treatment staff review the medical file or realize that Mr. Herder had verbalized a recent history of homicidal ideation.

31. On December 7, 2007, Officer Troy Smith was the correctional officer assigned to K-unit for the 3:00 p.m. to 11:00 p.m. shift.

32. PICC policy required that at least one correctional officer remain inside K-Unit at all times for the purpose of supervising mentally ill inmates.

33. At approximately 5:00 p.m., Officer Smith's fellow correctional officer and partner left K-Unit leaving Officer Smith as the lone guard for K-Unit.

34. Between 5:00 p.m. and 6:15 p.m., Officer Smith remained inside the K-Unit and was the only correctional officer in that unit during that time frame.

35. Shortly before 6:15 p.m., Officer Smith left K-Unit in order to relieve another officer who was working in another area of the prison.

36. Officer Smith did not return to K-Unit until after 6:45 p.m.

37. Upon Officer Smith's departure, the K-Unit was left completely unattended for approximately 45 to 55 minutes, during which time Charles Kirkland was beaten and strangled to death by his cellmate, Joshua Herder.

38. No correctional officer responded to the attack or sought to intervene or protect Charles Kirkland.

39. No correctional officer investigated or monitored Charles Kirkland's cell at the time of this incident.

40. At all relevant times hereto, MHM was aware of, and recklessly and deliberately indifferent to the need for additional and/or different training, testing, screening, rules, regulations, policies, procedures, guidelines, directives, monitoring, and investigation relating to the detention and protection of individuals with known mental illnesses.

41. At all relevant times hereto, MHM was aware of and deliberately indifferent to the need for additional and/or different training, testing, rules, regulations, policies, procedures, guidelines and directives with respect to the screening, housing, and detention of inmates.

42. At all relevant times hereto, MHM was aware of and deliberately indifferent to the need for additional and/or different training, testing, rules, regulations, screening, policies, procedures, guidelines, placement and directives concerning known, violent, mentally ill inmates.

43. At all relevant times hereto, MHM was aware of and deliberately indifferent to the need for additional and/or different training, testing, rules, regulations, policies, procedures, guidelines and directives with respect to the placement of violent and non-violent offenders in the same jail cell.

44. The brutal death of Charles Kirkland was a direct and proximate result of the recklessness and deliberate indifference of all defendants. Such reckless and deliberate indifference consisted of:

    a. failing to adopt appropriate policies and procedures with respect to the housing of inmates;

    b. failing to adopt appropriate policies, procedures, and guidelines with respect to the classification of inmates;

    c. failing to adopt appropriate policies, procedures and guidelines with respect to the segregation of known, violent inmates;

d. failing to adopt appropriate policies and procedures and guidelines with respect to mental health treatment for mentally ill inmates;

e. failing to adopt appropriate policies, procedures and guidelines with respect to staffing levels and the direct supervision of inmates;

f. failing to adopt appropriate policies, procedures and guidelines to prevent inmates such as Charles Kirkland and Joshua Herder from being left unattended and unmonitored for long periods of time;

g. failing to appropriately train staff with respect to the housing and screening of inmates;

h. failing to appropriately train staff with respect to the classification of inmates;

i. failing to appropriately train staff with respect to the segregation of known, violent inmates;

j. failing to appropriately train staff with respect to mental health treatment for mentally ill inmates;

k. failing to appropriately supervise mentally ill inmates and detainees;

l. failing to remain on post inside the K-unit;

m. failing to follow K-unit post orders;

n. failing to appropriately communicate with prison staff regarding Joshua Herder's homicidal ideations;

o. failing to appropriately screen, assess and/or classify Joshua Herder;

p. failing to appropriately document Joshua Herder's history of homicidal ideations;

      q.    failing to provide appropriate mental health treatment to Joshua Herder;

      r.    failing to realize Joshua Herder's recent history of homicidal ideations;

      s.    failing to appropriately inform prison officials and staff about Joshua Herder's homicidal ideations; and

      t.    failing to make appropriate recommendations for Joshua Herder's housing/cell assignment.

45. As a direct result of the reckless, deliberately indifferent and wrongful conduct of all defendants as set forth above, Charles Kirkland suffered severe injuries and damages, including, but not limited to:

      a.    lacerations;

      b.    feelings of air hunger;

      c.    injuries to organs and tissues;

      d.    pain and suffering;

      e.    mental anguish;

      f.    disfigurement;

      g.    humiliation;

      h.    embarrassment; and

      i.    ultimately, death.

46. As a direct and proximate result of all defendants' conduct, which caused Charles Kirkland's injuries and death, plaintiff is entitled to recover for her decedent's conscious pain and suffering and all other claims for damages recoverable by the decedent had he lived.

47. As a direct and proximate result of all defendants' conduct, plaintiff is entitled to recover for the pecuniary loss of all beneficiaries to Charles Kirkland's estate, as specified by the Pennsylvania Wrongful Death Act and the Pennsylvania Survival Act.

48. Plaintiff seeks all damages recoverable under the Pennsylvania Wrongful Death Act and the Pennsylvania Survival Act.

## COUNT I
## CIVIL RIGHTS
### Plaintiff
### v.
### MHM Services, Edgar Martinez, M.D., Maria Petrovic, M.D., and Troy Smith

49. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

50. The conduct of defendants, as set forth above, acting under the color of state law, was intended to harm Charles Kirkland and was recklessly and deliberately indifferent to the safety, bodily integrity, well-being, privacy and liberty of Charles Kirkland, and was committed in conscious disregard of the substantial and/or unjustifiable risk of causing harm to members of the public and to Charles Kirkland, and was so egregious as to shock the conscience.

51. The conduct of defendants, as set forth above, violated Charles Kirkland's constitutional rights to be free from unreasonable searches and seizures, rights to medical care and custody, rights to be free from cruel and unusual punishment, rights to privacy, rights to be free from a state created danger, and rights to due process as guaranteed by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, as remediable pursuant to 42 U.S.C. §1983.

52. As a direct and proximate result of these violations of Charles Kirkland's civil rights, Mr. Kirkland was caused to suffer grievous physical injuries as set forth above and herein.

WHEREFORE, plaintiff Mildred Kirkland, as Administratrix of the Estate of Charles Kirkland, demands judgment against defendants, in excess of $150,000, exclusive of interest and costs, which sum includes, but is not limited to:

    a.    damages and costs of suit recoverable under 42 U.S.C. §1983;

    b.    damages and costs of suit recoverable under the Pennsylvania Wrongful Death Act;

    c.    damages and costs of suit recoverable under the Pennsylvania Survival Act;

    d.    funeral and other expenses incurred on behalf of plaintiff's decedent;

    e.    all other damages and relief as is deemed necessary and equitable by the Court and/or jury presiding over this case.

## COUNT II
## MEDICAL NEGLIGENCE
**Plaintiff v. MHM Services, Dr. Petrovic and Dr. Martinez**

53.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

54.    Defendants MHM Services, Dr. Petrovic and Dr. Martinez were negligent and grossly negligent in their care and treatment of Joshua Herder.

55.    The negligence and gross negligence of defendants MHM Services, Dr. Petrovic and Dr. Martinez, includes, but is not limited to, the following:

    a.    failing to appropriately communicate with prison staff regarding Joshua Herder's homicidal ideations;

    b.    failing to appropriately screen and/or classify Joshua Herder;

    c.    failing to appropriately document Joshua Herder's history of homicidal ideations;

    d.      failing to provide appropriate mental health assessment and treatment to Joshua Herder;

    e.      failing to realize Joshua Herder's recent history of homicidal ideations;

    f.      failing to appropriately inform prison officials and staff about Joshua Herder's homicidal ideations; and

    g.      failing to make appropriate recommendations for Joshua Herder's housing/cell assignment.

    h.      failing to appropriately assure continuity of care for Joshua Herder.

WHEREFORE, plaintiff Mildred Kirkland, as Administratrix of the Estate of Charles Kirkland, demands judgment against defendants, in excess of $150,000, exclusive of interest and costs, which sum includes, but is not limited to:

    a.      damages and costs of suit recoverable under 42 U.S.C. §1983;

    b.      damages and costs of suit recoverable under the Pennsylvania Wrongful Death Act;

    c.      damages and costs of suit recoverable under the Pennsylvania Survival Act;

    d.      funeral and other expenses incurred on behalf of plaintiff's decedent;

  e.  all other damages and relief as is deemed necessary and equitable by the Court and/or jury presiding over this case.

                Respectfully submitted,

                **KLINE & SPECTER**
                *A Professional Corporation*

Dated: 10/22/08      BY: _____
                THOMAS R. KLINE, ESQUIRE
                DOMINIC C. GUERRINI, ESQUIRE

# Exhibit "A"

LETTERS OF ADMINISTRATION

REGISTER'S OFFICE
PHILADELPHIA COUNTY, PA

N⁰ A0311-2008

ESTATE OF **CHARLES EMMANUEL KIRKLAND**
AKA: CHARLES E. KIRKLAND

Social Security No. 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

WHEREAS, **CHARLES EMMANUEL KIRKLAND** late of 6006 OGONTZ AVE, PHILADELPHIA, PA 19141

died on the 7th day of December, 2007; and

WHEREAS, the grant of letters of administration is required for the administration of his estate.

THEREFORE, I, RONALD R. DONATUCCI, Register for the Probate of Wills and Grant of Letters Testamentary and of Administration, in and for the County of Philadelphia in the Commonwealth of Pennsylvania, hereby certify that I have granted Letters of Administration

to **MILDRED KIRKLAND**

who ha S duly qualified as Administrator of the estate of the above named decedent and ha S agreed to administer the estate according to law, all of which fully appear of record in the Office of the Register of Wills of Philadelphia County, Pennsylvania.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of my office, at Philadelphia, the 17th day of January 2008

*Deputy Register*

10-36 (Rev. 10/99)